J. D. EVERNGHIM and others *vs.* R. & A. ENSWORTH.

A debt due to a *firm* cannot be discharged by *one* of the *partners* applying it in payment of an *individual debt* owing by him to the debtor of the firm, unless done with the knowledge and approbation of the other partners.

*It seems* that demands against *individual members* of a firm may be set-off against demands of the firm, if the course of dealing of the firm in receiving such demands in payment is *uniform*, and so *notorious* that individuals dealing with them must be supposed to have had reference to it in their transactions with the firm.

A *tavern bill*, unless against a *traveller*, is not the subject of a set-off.

MOTION to set aside report of referees. Joseph D. Evernghim and his brothers, James and Gilbert, were partners in trade, as merchants conducting business at the village of Rochester under the name and firm of Evernghim & Co.; Joseph resided in New-York, James in Canandaigua, and Gilbert in Rochester; Gilbert having the principal management of the business. On the 12th June, 1826, at the city of New-York, Joseph and James, two of the partners, executed an *assignment* of all their property, real and personal, including the *debts* due the firm at Rochester, to their *father*, Gilbert Evernghim, for the benefit of himself and others, to secure monies due and responsibilities assumed, and on the 21st July, 1826, Gilbert executed a like assignment to his father for the same purposes. A suit was brought by the *assignee*, in the names of the assignors, against the defendants, and the cause was referred. On the hearing, the plaintiffs proved an account of goods, wares and merchandise sold the defendants, to the amount of $467,67. The defendants produced a receipt in these words: "Rec'd, Rochester, June 10th, 1826, of R. Ensworth, the sum of six hundred and fifty dollars, it being the amount of *his* account, and which sum is to be credited to him on *our* acct.—Of A. Ensworth & son." Signed, "Evernghims & Co.;" which receipt was in the hand writing of, and given by Gilbert Evernghim, jun. The defendants were *tavern-keepers* in the village of Rochester, and had an account, commonly called a *bar account*, to a large amount, against Gilbert Evernghim, jun. for entertainments, liquors and

other tavern refreshments, which they alleged would *over-bal-*
*ance* the account of the firm of Evernghims & Co. against
them, and to be proper set-off against such account. The
plaintiffs insisted that the *receipt* produced by the defendants
was *ante-dated*, and examined witnesses in support of their al-
legation; the defendants, on their part, gave evidence to
prove that it had been the uniform usage of the firm of Everng-
hims & Co. to allow and credit the *individual debts* of Gilbert
Evernghim, jun. on the demands of the firm against persons
indebted to them. The referees reported that there was *noth-
ing due to the plaintiffs*, who moved to set aside the report.

*D. D. Barnard*, for plaintiffs.

*F. M. Haight*, for defendants.

*By the Court*, SUTHERLAND, J. The referees allowed the
account of the defendants against Gilbert Evernghim, jun.
one of the plaintiffs; or at least, as much thereof as to balance
the claim of the plaintiffs. The question is whether such al-
lowance was proper upon any principle? I do not see how it
can be sustained. It is admitted that a firm is not responsible
for the individual debts of its members, and that such debts
cannot be off-set against a partnership demand, but it is con-
tended, 1st. That there was an actual payment of the plain-
tiff's account in this case, by the application of the defendants'
account to it, as proved by the receipt of June 10, 1826; and
2d. That it was the uniform custom of the plaintiffs to pay the
individual debts of the partners out of the store, and that it is
fairly to be inferred from that and other circumstances, that it
was agreed, or understood between the parties, that the de-
fendants' account against Gilbert Evernghim, jun. should be
credited or allowed, on the account of the plaintiffs against
them.

The receipt relied upon in support of the first ground was
proved to be in the hand writing of Gilbert Evernghim, jun.
the debtor of the defendants; and the evidence leaves scarcely
a doubt, that it was given long after it bears date, and was in-
tentionally ante-dated, for the purpose of overreaching the as-

NEW-YORK,
May, 1831.

Evernghim
v.
Ensworth.

NEW-YORK,
May, 1831.

Evernghim
v.
Ensworth.

signment which was made by the plaintiffs to Gilbert Everng-him, on the 12th of June and the 21st of July of the same year. I shall not recapitulate the facts and circumstances from which this inference, in my opinion, necessarily results; they are such as I think would be entirely satisfactory to any jury, for it is unimportant, in my opinion, whether this receipt was given before or after the assignment—whenever given, it was intended by Gilbert Evernghim, jun. as an appropriation of the partnership property, (a subsisting valid demand against the defendants,) in satisfaction of his own individual debt, the defendants being fully apprized of all the circumstances. It has been repeatedly decided in this court, that one partner cannot give the *partnership note* for his own private debt, so as to bind the other partners, unless they have been previously consulted, and consented to the transaction.   2 Caines, 246. 2 Johns. R. 300.  4 id. 251.   16 id. 34.   19 id. 157.   1 Wendell, 531.  In *Dobb* v. *Halsey*, 16 Johns. R. 34, it was held that where one partner delivers partnership property to a third person, in payment of his private debt, (the person who receives the property knowing that it belonged to the firm,) the person so receiving it is liable to the firm in an action for goods sold and delivered, to the full value of the property.   Judge Spencer remarks, that it makes no difference whether the note of the firm be given in such a case, or the partnership property be applied to pay the private debt of one of the partners ; in both cases the act is equally injurious to the other partners. It is taken their common property to pay a private debt of one of the partners ; and in *Gram & Stewart* v. *Cadwell*, 5 Cowen, 489, it was decided that one partner could not release a debt due to the firm, even during the partnership, in consideration of a debt due from him individually.

In order to make this a valid transaction, it was incumbent on the defendants to show that the arrangement was made with the knowledge and approbation of the other partners ; and such knowledge and assent must be clearly shown, and not left to be inferred from vague and slight circumstances.   The cases already cited show that such is the rule in this state. The evidence of assent is entirely insufficient to bind the plaintiffs.   Indeed, as has already been observed, the weight of evi-

dence is, that the arrangement was made after the plaintiffs had assigned all their property, this demand as well as others, for the benefit of their creditors, and after a breach had taken place between Gilbert Evernghim, jun. and his brothers and father. To presume their assent, under such circumstances, would be worse than absurd.

2d. The evidence as to the usage of the store in receiving accounts against the individual partners, in payment of partnership demands, falls very far short of establishing a clear and uniform practice in that respect. Some accounts of that description appear to have been allowed, but nothing like a general custom, so notorious that individuals dealing with them must be supposed to have had reference to it in their transactions with the firm, is shown. But if it were otherwise, it would not reach this case; it would apply only to legal demands, such as might be legally collected against the individual partners. Now it is shown, beyond all question, that with the exception of a very few items, the whole account of the defendant against Gilbert Evernghim, jun. was for tavern expenses, liquors and entertainment. Our statute, 1 R. L. 180, § 13, provides, " That if any innholder or tavern keeper shall trust any person, (other than travellers,) above the sum of $1,25 for any sort of strong or *spirituous liquors, or other tavern expenses,* he shall lose every such debt, and be incapable of suing for the same, or any part thereof." 3 Caines, 187. The defendants, therefore, never could have collected their account of Gilbert Evernghim, jun., and if the plaintiffs had expressly promised to pay it, such promise could not have been enforced; as long as the promise was executory, the statute would have been a complete bar to the action. If it were conceded, therefore, that the defendants credited Gilbert upon the express understanding that the firm were to allow the amount in their account against them, the agreement could not be enforced in this or any other action. The principles on which the report must have been founded are radically erroneous. It is therefore set aside, and a rehearing is ordered.